Curia, per Richardson, J.
This was an action on a count for money paid by the plaintiff, Smith, for the defendant, Mitchell, as bail. The question arising in the case is, whether the debtor by going from the State before the money was so paid on his account, and by staying out of the jurisdiction for four years thereafter, can thus elude the action, and afterwards plead such lapse of time in bar of his creditor’s final recovery of the debt ? Our act of limitations of 1712, (P. L. 102, sec. 6,) requires actions of account, on the case, &c., to be brought, in the language of the act, “ within four years next after the cause of such actions, or suits, and not after.” This limitation is without any reservation, saving, or exception, expressed in the act, where the debtor is out of the State, at the time the cause of action first accrued. Nor is there, in terms, any extension of the time, when the debtor dies before or after the cause of action, nor where he promises to pay a former debt. In such cases, the limitation has been postponed by judicial decision, not upon the expressed reservations of the act, but by the construction and intendment of the whole law of limitations. In the instance before us, the debtor by absenting himself, put it out of the power of his creditor to sue, until within two years before the action was brought. At no time before Mitchell’s return could Smith have sued him in this State: because no writ could have been served upon his person. Did then the four years, necessary to form the bar, begin to run from the time the money was paid, or from the return of Mitchell to the State, so as to be practically sued by Smith in our own jurisdiction ? If the debtor could in such way elude the possibility of any action for the four years required, and then set up the time so gained by himself in bar of the action, frauds might be easily practised. But on the other hand, do not the terms of the act, “within four years and not after,” form a conclusive bar to the recovery, notwithstanding? There is difficulty in reconciling such prohibitory terms to just principles, and the *319 means of preventing the fraudulent circumvention apprehended. Are 'we, then, to consider the negative terms of the act as forming a technical rule, to be enforced literally: or as furnishing a rational rule of action, which requires the principles essential to its subject matter to be carried out by construction ?
1. The statute of limitations is a great remedial enactment. It alters the common law by introducing many limitations to the right of action in named cases. The object of the act is to secure and quiet men in their estates and possessions; and one means of doing so, is by obliging creditors to demand their debts within a reasonable time, under the penalty of losing the right of action, in case of their neglect to sue within the prescribed time. The debt is not abolished — it is the remedy in the judicial forum that is denied, by reason of the creditor’s default. But shall we put such a construction as to make the act derogate from our principles, and require of the creditor an impossible condition, or to forfeit his right of action? The act allows four years, within which the creditor may sue at his own discretion. But in this case, Smith could not have the opportunity of sueing, contemplated by the act — the neglect of which opportunity is the cause of his forfeiting the right to sue, and is of course the material cause of the statutory bar. The action was eluded by Mitchell during the entire time of the four years allowed. — And shall we divest the law of its sense and justice, by disregarding the very condition, (neglect,) which should cause the creditor to lose his remedy ? I cannot attach such force and importance to the mere general phraseology of the act. It is not a plain instance of “ita lex scripta est,” which if plain, should be imperative. And I will add, that this is as strong a case, as that of a debtor dying before the cause of action accrued: which by fair construction has always suspended the limitation, (3 M’Cord. 455, 4 M’Cord. 423,) — there is the same cause for suspending it in this case as in that — the impossibility of sueing is the same. But let us consider another general principle for the construction of statutes.
2. When the statute is in derogation of the common law, without annulling the whole principle, we are not to carry the act beyond its strict enactments to that effect; and the general principle *320 still stands, as modified and altered. At common law there was no limitation in the time of actions (as is still the case, in debts under seal,) and we are not to carry the limitations prescribed, beyond the statutory modifications. We must, then, construe the literal enactments of our limitation act, so as to preserve the prim ciples and reasons of the common law, as far as they are left unaltered by the act. “ Within four years next, after the cause of such actions,” must mean a prescribed time; in the course of which, the creditor might have sued the debtor, as at common law — that is, within our own jurisdiction. The whole idea must be preserved, as the true exponent of the limitation, and is the essential condition of the bar, if we respect the principle just laid down; and the additional terms, “ not after,” cannot alter this construction. Now, then, although the debt had been due more than four years before the action ; yet Smith could not sue, before Mitchell came within the reach of our judicial process, and when such creditor is without default, the debtor cannot make up the bar, by withdrawing his person from the forum; before which, the act requires the creditor to sue, or lose his right of action. I have endeavored to place the decision of the case, upon the proper construction of the limitation act of 1712; because I think that act ought tobe considered as a series of enactments, predicated upon rational principles, the end of which must be kept in view, and their justice preserved; and would, whenever the terms of the act admit of such a construction, carry out, and digest its principles, into a uniform system. But I may well add, that by the statute of 4 Anne, c. 16, sec. 19, (P. L. 96,) it is enacted, &c.: “That if any person, or persons, against whom there is, or shall be any such suit, or cause of action, &c., ’’(action of account, or upon the case, &c.) he or she shall be, at the time of any such cause of suit, &c. “ given, or accrued, &c.; ” “ beyond the seas,” that then such person, or persons, who is, or shall be, entitled to any such suit, or action, shall be at liberty to bring the said actions against such person, or persons, after their return from beyond the seas, so as they take the same, after their return from beyond the seas, within such times, as are respectively limited, for the bringing of *321 said actions, before by this act, and by the said other act, made in the twenty-first year of the reign of king James the first.” This statute was made of force contemporaneously with our act of 1712, and still its reservation, it is true, is referable in terms only, to the statute of the 4th year of Anne, and to that of the twenty-first year of James the first. But notwithstanding this restriction, yet by a liberal construction, it may embrace the case before the court, as a law, made in pari materia with our act of 1712, which was passed seven years after that of the 4th year of Anne, and which was copied from and substituted with alterations, for that of the twenty-first year of James the first, the British statute of limitations. At all events, the statute of Anne, which is still of force, recognizes the principle upon which our decision turns. — And I can perceive no sufficient reason for concluding that our act of 1712, by its silence on that head, meant either to repeal the reservation or to avoid so essential a principle of justice. This would seem left open to fair construction. The direct expression of that reservation would seem to have been omitted, because it was assumed as a principle that belonged to the subject matter. Without such assumption, I know not how we could justify the adjudications noticed in my argument. For the terms, “within four years after the cause of action, or suit, and not after,” apply equally to all our adjudications where the debtor has acknowledged the debt anew, or has departed this life. — And it is only by the same reasonable interpretation that we postpone the limitation, so expressed, in all such cases.— And I cannot but suspect that the supposed difference between such adjudications and the case now before us, may be found merely in the fact, that acts of limitations have generally had an express' provision, (like the stat. of Anne,) for this last case and not for the others — whereas both are omitted in our act of 1712, and each class of cases have the same reason for their support. In the first the debtor suspends the limitation by his new assumption of the debt; in the second he does so by his death; and in the last by absconding.
Wherein does the cause for suspension in the last, appear less than in the first or second 1 Not in the wilfulness of the abscond *322 ing debtor, assuredly — nor in the utter inability of the creditor to bring the debtor within the jurisdiction of the State, in order to sue him. They are all equal instances of just construction. The same too may be said of the application of the statute to suits in equity. Such application has no express warrant in the terms of the act; but goes upon this principle of fair construction, that the obvious intention of an act, is as good as its letter. The whole argument in the present case goes upon the same principle. The rule then, as indicated by such adjudications, and by the statute of 4 Anne, as well as by the inherent reasons of the express limitation, is, that where the creditor could by no legal possibility, bring his action at any time, by reason of the absence of his debtor, the time of limitation will not commence to run until a legal action can be practically brought against the proper debtor; or, in case of his death, against his representative. We give no opinion upon the question, whether the debt of Mitchell may not be presumed to have been paid, from the great lapse of time — that is a question of fact, not of statutory limitation: and may still arise in the case; but it will be one for the consideration of the jury, upon a principle of the common law, which presumes actual payment, or satisfaction from great length of time. — And upon that question, the case of Turpin and Higgins may, very possibly, have its bearing.
The nonsuit is set aside and a new trial awarded.
Butler, J., concurred with Richardson, J.
Evans, J.
Our statute of limitations was passed on the twelfth day of December, 1712, and the act for declaring of force certain English statutes was passed on the same day. Among the statutes declared of force is the statute 4 Anne, c. 16. By the nineteenth section of that statute, it is declared in substance, that if the defendant when the cause of action accrued, be beyond seas, he may be sued after his return, within the time fixed by the stat. 21 James I., which is six years. The statute of James is not of force, and the time allowed for bringing actions of assumpsit, by our act, is only four years. In every other respect, there is no repugnancy be *323 tween our act of 1712, and the nineteenth section stat. 4 Anne, c. 16. As they were both declared to be the law of this State on the same day, they must be regarded as parts of one system and construed together, so far as they are consistent. The action in this case was brought within two years after the defendant’s return to the State, and the question, whether he is allowed four or six years, does not arise. For these reasons, I concur in granting the motion for a new trial.
Note. — It will be observed that the opinion ■ of the court in the case of Smith v. Mitchell, is represented as being delivered by Mr. Justice Richardson. This is done in conformity with the original manuscript, signed by all the judges. The opinions delivered by the judges seriatim, though differing in some respects, as far as the case itself is concerned lead to the same result ; and to that extent it would be unimportant to notice upon what precise points a majority of the court really did concur. But as an authority in future cases which may arise under the statute, somewhat differently circumstanced, it is perhaps important to notice, that although Richardson, J., is represented as delivering the opinion of the court, yet that in fact, as far as the opinion delivered by him differs from the opinion delivered by Mr. Justice Evans, the latter must be considered the opinion of the court; inasmuch as Butler, J., was the only judge who concurred entirely with Mr. Justice Richardson, in his construction of the act: while O’Neall and Earle, J., concurred in the opinion delivered by Mr. Justice Evans. It will be seen, that while Richardson and Butler, J., held that in this case the statute of limitations of 1712, fairly construed, by itself, and independently of the statute of Anne, was no bar to the plaintiff’s cause of action — Evans, O’Neall and Earle, J., place their opinion exclusively upon the force and application of the statute of Anne to the case before the court.
In relation to the construction of the statute of limitations of 1712, as it affects personal actions, it may perhaps add something to the strength of the views taken of that act in the opinion delivered by Mr. Justice Richardson, to advert to the case of King v. Smith, (ante. p. 10,) in which the court gave a very analogous construction of the same act, in regard to the action of trespass to try title. The clause of the act in relation to actions for lands, is as imperative that the action shall be brought within five years after the right or title to the same accrues, (see sec. 2. P. L. 101,) as that an action of account, or on the case, &c., shall be brought within four years from the accrual of the cause of action — and there is no exception or qualification in the statute, in one case, more than the other. Yet the court in that case recognize as the settled construction of the act in regard to actions of trespass for land, that the mere non claim of the owner, or the omission to sue, for the time limited by the act, creates in itself no bar to the plaintiff’s recovery.— It is necessary in order to bar the plaintiff, that there should have been some one in possession of the land, who might have been sued. The bar of the statute is intended to be interposed only upon the assumption that the plaintiff has neglected to prosecute his claim for the time limited; it follows therefore, if no one has been in possession of the land, claiming adversely, there has been no one who could be sued. So too in regard to personal actions, although the statute, in express terms, provides that the action shall be brought within four years from the accrual of the cause of action, and not after, the whole theory and design of the statute goes upon the assumption that the plaintiff has neglected to prosecute his action, which is not the fact where the debtor at the time the right accrues is out of the State, and therefore could not be sued. The authorities referred to below, would seem fully to sustain this construction of the statute of limitations, independently of the other question as to the virtual adoption into the act of 1712, of the nineteenth section of the statute 4 Anne. “A cause of action cannot be said to exist unless there be a person in existence capable of suing.” — 5 B. & A., 204. It would certainly seem equally essential to a cause of action, that there should be some one capable of being sued, as that there should be one capable of suing. — And so it has been held in the following case : “ Where the testator resided abroad at the time the cause of action accrued, and died abroad, it was held that his executors, who resided in England, might be sued within six years after tailing out probateBest. C. J., observed, “although the injury of which the plaintiffs complain, has existed more than six years, they had no cause of action until there was some person within the realm against whom the action could be brought. Cause of action is the right to prosecute an action with effect; no one has a complete cause of action until there is somebody he can sue, &c. 4 Bing. 686.
*323 Eaiile, J., concurred with Evans, J.